## Ex parte HARVELL.

### (District Court, E. D. North Carolina. September 30, 1920.)

1. War ⟜4—Existence does not suspend restrictions on arrests without warrant for offenses not connected therewith.

   The continued existence of the state of war with Germany does not suspend the constitutional rights of citizens, so as to justify an arrest without warrant for an offense not connected with the prosecution of the war, which would not be justified in times of peace.

2. Arrests ⟜58—Federal officers can arrest only for federal offenses.

   Federal officers have no power to arrest a citizen, unless he is charged with an act violating the federal statute.

3. Arrest ⟜63(3)—Federal officers may arrest without warrant for misdemeanor in their presence.

   Federal officers may arrest without warrant persons who commit in their presence acts declared by the Penal Code to be misdemeanors.

4. Arrest ⟜70—Prisoner, arrested without warrant, must be taken forthwith before a magistrate.

   Under Rev. St. § 1014 (Comp. St. § 1674), making proceedings for holding a person to answer a criminal charge similar to those under the laws of the state in which the proceeding takes place, and Comp. St. § 1678, requiring an officer arresting a citizen to take him before the nearest judicial officer for hearing and commitment or bail, a federal officer making arrest without warrant, whether for an act committed in his presence or for a felony of which he has information, cannot confine defendant in jail without first having preferred charges against him before a magistrate and given him an opportunity to be heard.

5. Habeas corpus ⟜30(3)—Mittimus for federal prisoner in county jail held insufficient.

   A mittimus, issued by a federal agent to a county jailer, which simply stated that defendant was remanded to the jailer's custody, without stating the charge, the duration of the imprisonment, or any time for hearing, is insufficient, and a prisoner held thereunder will be discharged on habeas corpus.

Habeas Corpus. Petition by T. H. Harvell to procure the discharge of C. W. Harvell from custody in a county jail. Petitioner discharged.

McClammy & Burgwyn, of Wilmington, N. C., for petitioner.

E. F. Aydlett, Dist. Atty., and C. E. Thompson, Asst. Dist. Atty., both of Elizabeth City, N. C., for respondent.

CONNOR, District Judge. On September 16, 1920, T. H. Harvell, in behalf of C. W. Harvell, presented his petition, duly verified, alleging that C. W. Harvell was imprisoned in the county jail of New Hanover county and restrained of his liberty—

"by a government agent from the Department of Justice; * * * that the cause of such imprisonment or restraint, according to the knowledge and

---

belief of the petitioner, is under the Mann Act [Comp. St. §§ 8812–8819], but no warrant or order of arrest, or other process, as this petitioner believes and alleges, has ever been issued; that no warrant has been read to petitioner, no charge has ever been made against him, and no process ever served upon him, other than the said C. W. Harvell was taken into custody by an agent of the government and incarcerated in the common jail of New Hanover county, without being permitted to give bond; that the legality of his imprisonment has not been inquired into."

Petitioner prayed that a writ of habeas corpus issue, etc. The writ was directed to the jailer of New Hanover county, and pursuant thereto, R. L. Harber, deputy sheriff and jailer, produced the body of C. W. Harvell before me at the Federal Court Building in the city of Wilmington, and in his return to the writ produced a mittimus in the following words and figures:

"Remand.                                                          Form 41.
            "United States Department of Justice E. District.
                                                 "September 16, 1920.
"To the Keeper of New Hanover County Jail:
    "C. W. Harvell, a United States prisoner, is hereby remanded to your custody.
"Deputy S. S. Nelms, Agt. Dept. J.,
    "Pr. A. B. West.          F. C. Hamby, U. S. Marshal
                                                 "Dept. Justice."

The district attorney not being in Wilmington, the hearing of the petition was continued until Tuesday, September 21, 1920, at Laurinburg, N. C. Petitioner was admitted to bail in the sum of $500 for his appearance at that time and place.

A copy of the petition, writ, return, and order were transmitted to E. F. Aydlett, Esq., district attorney, at Elizabeth City, N. C. The petition, writ, and return thereon were heard at Laurinburg, N. C., September 21, 1920; the petitioner being present and represented by his attorney, K. O. Burgwyn, Esq., and the government by C. E. Thompson, Esq., assistant district attorney. No answer was filed to the petition or return of the jailer.

S. S. Nelms made an oral statement from which it appeared that petitioner was, on September 16, 1920, in the city of Wilmington, his home being about six miles distant, in an adjoining county; that Nelms, as an assistant agent of the Department of Justice, received information, which he regarded reliable, that petitioner had violated the Mann Act. He also received information which caused him to believe that, unless apprehended, petitioner would attempt to make his escape. He was, at that time, under bond for his appearance before the state court upon a charge based upon the same facts of which Nelms had received information. He declined to give the name of the person who informed him that petitioner would attempt to escape, or in what such information consisted. The United States commissioner at Wilmington, N. C., was, on September 16, 1920, away from the city. Resident commissioners were at Jacksonville and Whiteville, in adjacent counties. Nelms wired such information as he had to F. C. Hamby, Esq., Agent Department of Justice, at Raleigh. He received an answer, but the telegram was not produced on the hearing. Nelms says that he had not received an answer to his telegram to Hamby at the time he

arrested petitioner. A warrant was issued by W. P. Batchelor, Esq., United States commissioner at Raleigh, N. C., upon the complaint and affidavit of Hamby, based upon the telegram from Nelms. It reached Wilmington, N. C., on the night of September 16th. Nelms says:

"I arrested Harvell and turned him over to West, deputy marshal. Petitioner's home is six miles from Wilmington."

No testimony was offered, or heard, touching the question of petitioner's guilt, or of his alleged purpose to escape. The only question considered was directed to the authority of either the agent of the Department of Justice or the deputy marshal to arrest and imprison petitioner without a warrant, or other authority than that shown upon the hearing.

Passing the question respecting the extent of the authority vested in an agent of an executive department to arrest and commit a citizen to imprisonment, without the intervention of an officer empowered to hear and determine whether probable cause for such arrest had been shown, and conceding to such agent the authority of a marshal, or his deputy, the very important question is presented whether he is, or can be without violating the constitutional and statutory rights of the citizen, authorized to pursue the course disclosed by the record in this proceeding.

[1] I am not inadvertent to the fact that the United States is legally at war with the Imperial Government of Germany. The offense with which petitioner is charged had no relation to a state of war, nor is it suggested that such offense was committed within five miles of any army camp. It may not be inappropriate to call the attention of officers in the civil service of the government to the declaration of the Supreme Court that—

"The Constitution of the United States is a law for rulers and people equally in war and in peace, and covers with the shield of its protection all classes of men, at all times, and under all circumstances. No doctrine involving more pernicious consequences was ever invented by the wit of men than that any of its provisions can be suspended during any of the exigencies of government." Ex parte Milligan, 4 Wall. 120.

[2] The inquiry therefore comes: When, and under what circumstances, may an officer, authorized to arrest a citizen charged with violation of the Penal Code of the United States (35 Stat. 1088), do so without a warrant, and what may he do with the person arrested? It must always be kept in mind that federal officers and courts have no power or jurisdiction to arrest, try, or punish a citizen, unless the act with which he is charged violates a federal statute. In that respect their power is subject to limitations not imposed upon state officers and courts having jurisdiction to arrest, to try, and to punish for what are known as "common-law offenses."

[3] It is not questioned that federal officers may arrest, without a warrant, persons who commit, *in their presence*, acts declared by the Penal Code to be misdemeanors. It may be that they may, within certain limitations, arrest without a warrant persons charged with acts declared to be felonies by the Penal Code, not committed in their presence. The only statute which I find conferring such authority is sec-

tion 1676, U. S. Comp. Statutes Annotated 1916, vol. 3, p. 3484 (2d Ed.), which provides that when a marshal, or his deputy, "shall find any person or persons in the act of operating an illicit distillery, it shall be lawful for such marshal or deputy marshal to arrest such person or persons, and take him or them forthwith before some judicial officer."

[4] While my attention is not directed to any other statute conferring such authority, it has been held that, under the provisions of section 1674, Comp. Stat. (R. S. § 1014) vol. 3, p. 3447:

"All proceedings for holding an accused person to answer to a criminal charge are assimilated to those under the laws of the state in which the proceedings take place." See note 13, p. 3451, Comp. Stat. 2d Ed. (West Publishing Co. Edition).

It is also held that, in the absence of any constitutional or statutory provisions, the common law furnishes the rule as to the mode of procedure in criminal cases in the federal courts. U. S. v. Kilpatrick (D. C.) 16 Fed. 765; 4 Blk. Com. (Jones) § 328, p. 2512, and notes. Section 1674, Comp. Stat., after naming the officers who may issue warrants for the arrest of persons charged with violation of the federal Penal Code, among whom are commissioners, mayors of cities, and justices of the peace, prescribes that the procedure shall be "agreeably to the usual mode of process against offenders in such state." Section 1678, Comp. Statutes, vol. 3, p. 3484, prescribes, in unmistakable terms, the duty of an officer arresting a citizen charged with violating a federal statute, "to take the defendant before the nearest * * * judicial officer having jurisdiction under existing laws for a hearing, commitment, or taking bail."

This is in accord with the provisions carefully guarding the right of the citizen, found in the North Carolina Statutes. Chapter 80, Pell's Rev. 1908. Conceding the power to arrest petitioner, the offense charged being a felony, although no proof is offered to sustain the suggestion that he would escape before a warrant could be procured, and of the fact that he was under bond for his appearance before the state court upon a charge of which that court held that it had jurisdiction, based upon the same alleged facts, no authority is suggested by the district attorney for the incarceration in jail by the officers upon the so-called "mittimus" issued by either one or all of them. It is not clear who, in fact, did sign the "mittimus." Mr. Hamby, who purports to have done so, was in Raleigh at the time. Each of the names appears to have been written by the same person. ·

When an officer is exercising, under statutory limitations, powers affecting the personal liberty of the citizen, he should exercise a high degree of care in complying strictly with the forms which essentially affect the substance of the procedure. They may not, for any reason, be violated or neglected. It is the right of the citizen to demand, at every stage of a proceeding, involving and, as here, resulting in his incarceration in jail, that the law, in form and substance, be complied with, to the end that he may be informed of the cause of his arrest and present the record, made by the officer, upon an application for a writ of habeas corpus.

[5] The record made by the agents, or officers, who arrested, issued the "mittimus," and caused the imprisonment of the petitioner, fails to comply with any, and violates every, statute enacted for their guidance and the protection of the rights of petitioner. It fails to set out the cause of the arrest and imprisonment, how and when he could have a hearing and be confronted by his accusers and their witnesses, or make his defense, or the manner, if at all, in which he could be released from imprisonment. It states that petitioner, "a United States prisoner, is hereby remanded to the custody" of the jailer. When, how, or by what judicial procedure petitioner became "a United States prisoner," and by what authority he is "remanded" to the custody of the jailer, is left to conjecture, without any suggestion enabling the "prisoner" to have a hearing to give bail or be otherwise released. So far as the "mittimus" informs the petitioner or the jailer, he was to be held in custody perpetually. Nothing short of a writ of habeas corpus could secure an examination of the cause of his imprisonment or his release. The only possible explanation of the conduct of the agents or officers who promulgated this so-called "mittimus" is that they used a blank form of a "mittimus" committing a defendant to jail, in execution of a final judgment rendered after trial and conviction and directed to a United States marshal. Such disregard of essential provisions of criminal procedure, resulting in imprisonment of a citizen, without being informed of the cause of his imprisonment or an opportunity to be heard in his defense, indicates a degree of ignorance or disregard of law difficult to account for and without justification or excuse. A great and wise judge in the early days of the republic, referring to arrests without a warrant, said:

"No proceeding, under the color of law, can be more susceptible of being wrought into an engine of oppressive power, than that of depriving an individual of his liberty, and of consigning him to imprisonment upon an 'ex parte hearing.' Every freeman has a right to be confronted with the witness against him, *in all stages of his accusation;* the privilege is inherent and the right to demand the opportunity for proving his innocence *simultaneous with the first step of the prosecution.* Before, therefore, any commitment can be lawfully made, the accused is entitled to an opportunity of showing, either that the act he is charged with is no crime in the eye of the law—that if any wrong has been done he is not the perpetrator of it, or that however strong the evidence may be against him, the offense alleged is of a class justifying the discharge of his person upon the production of such bail as may be legally required of him." Hanson, Judge, in United States v. Almeida, 2 Wheeler, Cr. Cas. N. Y. 576.

In State v. Parker, 75 N. C. 249, 22 Am. Rep. 669, Mr. Justice Bynum, holding that a constable, who arrested, imprisoned, and discharged, without a warrant, a man found intoxicated on the streets of a town, was guilty of an assault, said:

"Men may not be arrested, imprisoned and released upon the judgment or at the discretion of a constable or any one else. If the alleged offense be criminal in its character and committed in the presence of the officer, he may arrest and take the offender before a magistrate for trial."

After setting forth the course pursued by the constable the learned justice said:

"The constable thus constituted himself the judge, jury and executioner. *This is the best description of despotism.*"

In Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, Justice Bradley, in an opinion of great learning and ability, quoted Lord Camden's language in his celebrated opinion regarding unwarranted searches and seizures:

"Lastly, it is urged as an argument of utility, that such a search is a means of detecting offenders by discovering evidence. I wish some cases had been shown, where the law forceth evidence out of the owner's custody by process. * * * But our law has provided no paper search in these cases to help forward the conviction. Whether this proceedeth from the gentleness of the law towards criminals, or from a consideration that such a power would be more pernicious to the innocent than useful to the public, I will not say."

Justice Bradley says:

"The principles laid down in this opinion affect the very essence of constitutional liberty and security."

The pertinency of this language is found in the fact that the same amendment (article 4) secures "the right of the people to be secure in their persons," as "in their * * * houses, papers, and effects, against unreasonable searches and seizures," and provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

In Boyd's Case it was held that the "language of Lord Camden was relied on [by the authors of the amendment] as expressing the true doctrine on the subject of searches and seizures, and as furnishing the true criteria of the reasonable and 'unreasonable' character of such seizures." The statutes, therefore, enacted by Congress, unless in violation of the Constitution, prescribing the manner in which the persons of citizens may be seized, arrested, and imprisoned, are the sole standard of what, in that respect, is "reasonable." Any other method of doing so is "unreasonable," and therefore unlawful. They constitute the standard by which the right of the citizen is measured and the power of the officer is limited. Referring to the suggestion made in defense of the procedure adopted in Boyd's Case, supra, and held to violate the Constitution, Justice Bradley says:

"Though the proceeding in question is divested of many of the aggravating incidents of actual search and seizure, yet, as before said, it contains their substance and essence, and effects their substantial purpose. It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficiency, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of the courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon."

In view of the unusual powers recently conferred upon administrative officers, the frequent disregard of the legal rights of the citizen in

the enforcement of "war statutes," essential to the safety of the country while in a state of war, the increasing extension of federal control of the conduct of the citizen under recently adopted amendments to the Constitution, requiring the employment of agents, inspectors, and many others whose titles and whose powers are uncertain, indefinite, and unknown to the people, and for the due enforcement of such statutes and execution of such powers in accordance with law, thus bringing those charged with violating the law to trial by lawful methods of procedure, insuring respect for law by both officers and citizens, I have given the case careful examination and consideration, and set out at more than usual length the law as enacted by Congress and expounded by the courts. The authority given officers for the detection of crime and arrest of alleged criminals is ample for the enforcement of federal statutes. If this were not so, the remedy must be found by appeals to the legislative department of the government, and not by the exercise of doubtful authority, or resort to doubtful methods by executive or administrative officers or strained construction by the courts.

The imprisonment in jail of a citizen without warrant, without opportunity for a hearing or to give bail, is a serious matter, and while, in case of necessity, recognized by law, for the protection of the safety of the state and the due administration of its laws, an arrest may be made without warrant, the duty in every case is imperative upon the officer "to forthwith carry the person arrested before the nearest judicial officer having jurisdiction to hear and determine the legality of such arrest," to issue a warrant upon affidavit setting forth the substance of the offense charged and the substantial and material features thereof. Ex parte Van Hoven, Fed. Cas. No. 16,858. "The citizen is entitled, at all times, to be apprised of the crime of which he is accused and of the acts charged constituting the crime." U. S. v. Ruroede (D. C.) 220 Fed. 210. Save in cases of pressing necessity and within clearly defined legal exceptions, a warrant should be procured *before the arrest is made*. This is due process of law. I have heard no evidence regarding the charge, or evidence of petitioner's guilt.

The question may come to me through lawful procedure, when petitioner will be entitled to be heard by a court and jury, which has not "formed and expressed an opinion" concerning his guilt. The marshal informs me that a new warrant against petitioner has been issued by a United States commissioner and placed in his hands. It is clear that the petitioner is unlawfully restrained of his liberty and is entitled to be discharged. The marshal will be notified of this order, to the end that the government's officers may proceed to deal with the case in accordance with "the statutes in such cases made and provided" and the "law of the land."

It is so ordered.