### UNITED STATES v. REMBERT.

(District Court, S. D. Texas, at Houston. November 8, 1922.)

No. 1367.

1. **Searches and seizures ☞7—Submission to search not consent to unlawful search.**

Submission by a citizen to acts of an officer will not be taken as consent to an unlawful search or arrest, nor deprive the citizen of his constitutional rights, unless the evidence clearly shows that the submission was really voluntary, with a desire to invite search.

2. **Arrest ☞63(4)—Belief to justify arrest without warrant.**

To justify an arrest without warrant, it is not essential that the officer absolutely know that an offense is being committed, but he must believe it is being committed, and must believe on the evidence of his own senses in case of a misdemeanor, and in case of a felony on credible evidence of other persons.

3. **Arrest ☞63(4)—Justification for arrest without warrant.**

To protect an officer in making an arrest without warrant, if he has a reasonable belief on reasonable grounds that an offense is being committed,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

it is not necessary that it be established that the offense was actually committed.

4. **Arrest ☞63(3, 4)—Intoxicating liquors ☞249—Justification for arrest and search without warrant.**

A federal prohibition agent, who by the evidence of his senses discovers, or in good faith believes he discovers, with reasonable grounds for such belief, that the driver of an automobile is intoxicated, may lawfully arrest such person, and also the automobile, and search it without a warrant.

5. **Searches and seizures ☞1—Exploratory search unauthorized.**

No general exploratory search and seizure of either persons, houses, or effects can ever be justified, either with or without a warrant.

6. **Searches and seizures ☞3—Search of private residence unauthorized without warrant.**

Under the federal laws, no search of a private residence without a warrant can ever be justified.

7. **Searches and seizures ☞7—Scope of constitutional provision.**

The constitutional provision (amendment 4) against unreasonable searches and seizures is directed to prevent general exploratory writs and investigations of the homes of persons and the property of citizens, and does not prevent an arrest in accord with the course of the common law, without a warrant and the seizure of instruments and evidence of crime.

8. **Arrest ☞63(3, 4)—Rule as to arrest without warrant; search may follow lawful arrest without warrant.**

Whenever a felony has been committed, either in the presence of an officer or as to which the officer has a belief, based on reasonable grounds, or a misdemeanor has been committed in the presence of the officer, or which he has reasonable ground, from the evidence of his senses, to believe is being committed, he may make an arrest without a warrant and seize instruments and evidence of crime.

9. **Searches and seizures ☞1—Automobile may be forfeited.**

An automobile may be guilty of an offense, and under the federal laws, where it is apprehended in the handling of prohibited goods, it is subject to arrest and forfeiture.

10. **Intoxicating liquors ☞247—"Discovered" in act of illegal transportation.**

Under Prohibition Act, tit. 2, § 26, providing for seizure and forfeiture of an automobile used by any person "discovered" in the act of illegally transporting liquor, such discovery may be said to have been made when a prohibition agent is induced by the evidence of his senses to believe, on reasonable grounds for belief, that the offense is being committed.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Discovered.]

Criminal prosecution by the United States against Tom Rembert. On motion by defendant to quash the information and suppress evidence. Motion denied.

H. M. Holden, of Houston, Tex., for plaintiff.

Johnson & Gilmore, of Houston, Tex., for defendant.

HUTCHESON, District Judge. In this case the defendant, Tom Rembert, has filed a motion to quash the information filed against him, and suppress the evidence which will be offered in support of the information. The evidence establishes that the officers had no warrant, either of arrest or for search of the defendant or his car, and that the search was made, without his consent, and that in and by the search alone the evidence was obtained upon which they seek to convict him. The motion of the defendant must be sustained, unless the circum-

stances détailed by them gave the officers the right to arrest and search the defendant and the automobile without warrant.

The circumstances as testified to by the officers on the hearing of the motion, which I find to be true, are these: About midnight on a moonlight night on a country road on the outskirts of Houston prohibition officers saw approaching them a Ford car driven by the defendant. The progress of the vehicle, as testified to by the officer, was marked by such a zigzagging course that he concluded the driver was intoxicated, and the vehicle being used to transport liquor. On that belief he arrested the vehicle, and on search of it discovered the bottle of liquor in question and that the defendant had been drinking.

The principle invoked by the defendant is so fundamental, and the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures is so clearly guaranteed by the Constitution (amendment 4), that it would seem that the limits of the rights of an officer in the enforcement of law, and of a citizen in the enjoyment of his liberties, ought to be as well understood and as well observed as copybook maxims, for there can be no liberty except where there is a just and proper law enforcement, and there can be no proper law enforcement where liberty is unlawfully infringed.

The fact, which is all too evident, on the one hand, that overzealous officers are not nice to find these limits and live within them, and, on the other hand, that the peaceable and law-abiding citizen is loth to enter upon a dispute with officers of the law when his guaranteed rights are infringed, makes it not only permissible, but desirable, that the court now briefly state the legal principles which control the matter of arrest and searches in such clear and definite form as that no federal officer can hereafter claim the excuse of ignorance when he violates a fundamental law, in order to secure evidence of the violation of some other law, and that well-disposed and law-abiding citizens may be advised of their obligations in the premises.

[1] It must be first premised that, where an officer politely and decently, and without physical threat has assumed to act in his official capacity, he is acting de facto, if not de jure, and a peaceful citizen should not forcibly resent the action, even though he knows the officer is, as to the act, greatly exceeding his authority, resting confidently upon the belief that this submission will not impair any of his constitutional rights; for, as the courts have repeatedly held, such action will not be taken to be a consent to an unlawful search or arrest, but merely a peaceful submission to officers of the law. United States v. Slusser (D. C.) 270 Fed. 819; Youman v. Commonwealth, 189 Ky. 152, 224 S. W. 864, 13 A. L. R. 1303; Amos v. United States, 255 U. S. 317, 41 Sup. Ct. 266, 65 L. Ed. 654.

Any other course on the part of the citizen would place him in the difficult and dangerous position of undertaking to protect by force the rights which in his opinion the officers are seeking to impair, when it may turn out that the officer in fact has the authority, and his action may, in fact, be legal. This principle, that the courts of the United States will not put the citizen to the alternative of contesting by force with officers, or waiving his constitutional rights, runs throughout the federal decisions, and gives character and meaning to their emphatic

holding that evidence illegally obtained cannot be used, and that the submission of a citizen to the officer cannot deprive him of his constitutional rights, unless the evidence clearly shows that the submission was really voluntary and with a desire to invite search, and not done merely to avoid resistance.

In this case, therefore, the defendant, Rembert, has lost no right by his failure to forcibly resist the officers, and, if the action of the officers was illegal, the fact that intoxicating liquor was found in his car does not in any manner prejudice him on this motion. United States v. Slusser (D. C.) 270 Fed. 819, puts the matter very well thus:

"An unlawful search cannot be justified by what is found. A search that is unlawful when it begins is not made lawful when it ends by the discovery and seizure of liquor. It was against such prying, on the chance of discovery, that the constitutional amendment was intended to protect the people."

The decision of the motion, then, depends entirely upon whether the officers, under the circumstances testified to by them, needed a search warrant or a warrant of arrest in order to justify what they did. The defendant invokes the constitutional protection against search and seizure, asserting that no search and seizure could be made of his person, his house, his papers, or his effects without a warrant authorizing such search.

In this broad statement the defendant errs. If this were a question of the search of a private residence without warrant, the motion should be sustained. On the other hand, it is equally well settled that the provision invoked is not against *reasonable* searches and seizures, but against unreasonable searches and seizures, and as the author of Ruling Case Law well puts it:

"The framers of the Constitutions of the United States and of the states merely sought to provide against any attempt by the Legislature or otherwise, to authorize any unreasonable search and seizure. This restriction was intended to operate on legislative bodies, so as to render ineffectual any effort to legalize what the people expressly stipulated could in no event be made lawful; upon executives, so that no law violative of this constitutional inhibition should ever be enforced; and upon the judiciary, so as to render it the duty of the courts to denounce as unlawful any unreasonable search and seizure, where without color of authority, or where sought to be justified under legislative sanction."

And it results that in each case where an arrest has been made, or a search or seizure effected, it is the duty of the court to determine whether, if it was made under any particular law, the law was itself constitutional, or, if not made under the authority of a statute, whether in the particular case the method employed by the officers was reasonable or unreasonable.

So profound has been the influence upon English and American law of the conception that the privacy of one's home is essential to the maintenance of one's manhood and self-respect, that, in short, an Englishman's home is his castle, that practically no American legislation has been found which has not declared in terms against the search of a private dwelling without a warrant, and so profound is the judicial conception of the necessity for the maintenance of that right in its Anglo-Saxon vigor and strength, that the courts have held that a stat-

ute which would undertake to authorize a general search of private houses, either without a warrant or upon a general warrant, was unconstitutional and void. So in Ruling Case Law, vol. 24, p. 705, the matter is thus stated:

"The means generally invoked, and the only legal means that can be invoked, to search the premises of a private individual, is a search warrant. This protection of the home and private books, papers, and effects of the individual is guaranteed by the federal, as well as the state Constitution, and a private person or an officer who breaks into the privacy of the home and subjects its occupants to the indignity of search for evidence of crime, without a legal warrant for that search, renders himself liable in damages."

And again, in the same volume, at page 711, quoting White v. Wagar, 185 Ill. 195, 57 N. E. 26, 50 L. R. A. 60, it was said:

"A search warrant, like the oath or affidavit on which it is based, must conform strictly to the constitutional and statutory provisions providing for its issuance, *for there is not a description of process known to the law the execution of which is more distressing to the citizen.* Perhaps there is none *which excites such intense feeling in consequence of its humiliating and degrading effect.*"

A people which has guaranteed to it the right of the ballot, and the right, individually and collectively, to manage its own affairs, deserves to be and is protected against the prying impudence of a general search by persons merely because they have commissions as officers of the law. This protection is fully guaranteed, and no officer has the right, upon mere suspicion, to search the premises of any person for the evidence of the commission of any crime; while in the case of the laws of the United States it has not been left to the courts alone to protect the citizen as to his private residence against this species of humiliating indignity, but the Congress of the United States has declared that—

"Any officer, agent or employee of the United States engaged in the enforcement of the National Prohibition Act, or any other law of the United States, who shall search any private dwelling as defined in the National Prohibition Act and occupied as such dwelling, without a warrant directing such search, or while so engaged shall without a search warrant maliciously and without reasonable cause search any other building or property shall be guilty, and may be fined not more than one thousand dollars, or imprisoned not more than one year."

Since, however, this is not a case of the search of a private residence, but is a case of an arrest and search of an automobile, and of the defendant, who was driving it, it remains to inquire what is the legal aspect of the procedure adopted in this case, and whether it was authorized either by statute or by the course of common law. If this were a case of an arrest of a person, where it appeared to the arresting officer that he was carrying liquor, it is fundamental that no warrant would have been necessary, and a search of his person for evidence of the crime would have been fully sanctioned. Fremont Weeks v. U. S., 232 U. S. 390, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; 5 Corpus Juris, p. 434, § 74; United States v. Snyder (D. C.) 278 Fed. 650; United States v. Murphy (D. C.) 264 Fed. 842. As was stated in the Weeks Case, the right of the government "to search the person of the accused when legally arrested to discover and seize the fruits or evidence of crime  *  *  *

has been uniformly maintained in many cases," and it is expressly declared in all of the authorities that the constitutional provision against search and seizure has reference only to general searches for the purpose of obtaining evidence, and has no reference to, nor does it prevent, arrests in proper cases without warrant. See Commonwealth v. Phelps, 209 Mass. 404, 95 N. E. 871, Ann. Cas. 1912B, 570, where the court says:

"It was laid down by Chief Justice Shaw in Commonwealth v. Carey, 12 Cush. 246, 251, that 'if a constable or other peace officer arrest a person without a warrant, he is not bound to show in his justification a felony actually committed, to render the arrest lawful; but if he suspects one on his own knowledge of facts, or on facts communicated to him by others, and thereupon he has reasonable ground to believe that the accused has been guilty of felony, the arrest is not unlawful.' * * * But it was pointed out in Jackson v. Knowlton, 173 Mass. 94, 53 N. E. 134, that the word 'suspect' is ordinarily used in place of 'believe,' * * * in stating what the officer must have reasonable grounds of. If, as is undoubted law, it is enough that the officer suspect that a felony has been committed, it must be enough that he had reasonable grounds to suspect."

See 2 Am. & Eng. Ency. of Law (2d Ed.) 870. See also general discussion of the right to arrest without warrant in 2 Ruling Case Law, pp. 446 to 458, where, citing Porter v. State, 124 Ga. 297, 52 S. E. 283, 2 L. R. A. (N. S.) 730, the editor says:

"The right to dispense with warrants in these instances probably had its origin in the necessity of preventing the escape of offenders during the period of delay incident to procuring warrants, if such formality had been required."

The editor of Ruling Case Law, on page 447, declares that the right of the officer to arrest persons who he has reasonable ground to believe committed a felony, is absolute. In the same text it was declared that as to breach of the peace, in which drunkenness and other offenses connected with the illegal handling of liquor have by modern opinion been included, an officer has the right to arrest when an offense is committed in his presence, and the courts have held that an offense is held to have taken place within the view of the officer when his senses afford him knowledge that one has been committed. 2 R. C. L. 448; In re Mobile (D. C.) 278 Fed. 949; O'Connor v. U. S. (D. C.) 281 Fed. 396; United States v. Borkowski (D. C.) 268 Fed. 412; Elrod v. Moss (C. C. A.) 278 Fed. 123; United States v. Snyder (D. C.) 278 Fed. 650; Lambert v. U. S. (C. C. A.) 282 Fed. 413.

[2] Now it appears from these decisions that it is not essential that, in making an arrest without warrant, the officer must absolutely know that an offense is being committed; he must believe it is being committed, and must believe upon the evidence of his own senses in the case of a misdemeanor, and in the case of a felony upon credible evidence of other persons.

[3] If an officer has a real belief, on reasonable grounds for the belief, it is not necessary that it actually turn out that the offense was actually committed to protect the officer in respect to his action. As the matter is well put in 2 Ruling Case Law, p. 451:

"Probable cause for an arrest has been defined to be a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. People v. Kil-

vington, 104 Cal. 86. Yet probable cause does not depend on the actual state of the case in point of fact, as it may turn out upon legal investigation to be, but on knowledge of facts and circumstances which will be sufficient to induce a reasonable belief in the truth of the accusation."

The same author, on page 452, says:

"The authority of an officer to arrest without warrant may be enlarged by statute, and when such enlargement is made no constitutional right is violated, for it is uniformly held that the constitutional limits on searches and seizures have relation only to those general searches for the purpose of obtaining information without warrant to do so and constitute no limitation on the right of arrest."

Again, on page 463, the same author states:

"The prohibition against unreasonable searches and seizures is directed against the use of general warrants authorizing searches and arrest, and has no effect upon the right to arrest without a warrant."

And while it is true that a federal officer has no power to arrest except for the violation of a federal statute (see Ex parte Harvell [D. C.] 267 Fed. 997), there is no doubt under the federal practice that federal officers may arrest without a warrant persons who commit in their presence acts declared by the Penal Code to be misdemeanors, and may, with the same authority as at common law, arrest without a warrant, for offenses declared to be felonies. It is true, and should be distinctly borne in mind, that—

"When an officer is exercising under statutory limitations, powers affecting the personal liberty of a citizen, he should exercise a high degree of care in complying strictly with the forms which essentially affect the substance of the procedure." Ex parte Harvell (D. C.) 267 Fed. 997.

It is also true that, when conditions exist which authorize arrest without warrant as above defined, the officer may and should make such arrest. Now, as applied to offenses against the liquor laws, the courts have quite uniformly decided that drunkenness in a public place, even though a misdemeanor, is an offense for which an officer may arrest without warrant. State v. Hunter, 106 N. C. 796, 11 S. E. 366, 8 L. R. A. 529; Angell v. State, 36 Tex. 542, 14 Am. Rep. 380. It is also the law that, where the statute authorizes the arrest of a person in a state of intoxication, the officer may determine whether to arrest, or not, in his discretion. Commonwealth v. Cheney, 141 Mass. 102, 6 N. E. 724, 55 Am. Rep. 448. And a police officer, making an arrest in good faith and upon probable cause, is held not to be liable, although he happens to arrest somebody who is not drunk. 2 Ruling Case Law, p. 455; Erie R. Co. v. Reigherd, 166 Fed. 247, 92 C. C. A. 590, 20 L. R. A. (N. S.) 295, 16 Ann. Cas. 459.

If, therefore the officer in this case had observed this defendant in an intoxicated condition, and had arrested him and searched him for liquor on his person, there would be no doubt under the authorities that he was within his rights, that he did not need a warrant to make the arrest, and that the search which followed the warrant was perfectly legal. Nor do I understand the defendant to contest this conclusion. His position is that under the undisputed facts the officers did not arrest him, but stopped him for the purpose of requiring him to

submit to a search in order to find evidence against him, and that this action violated the principle against exploratory searches, either of the person or of property, and he further contends that, if it be considered that the officer did arrest him, it gave the officer authority only to search the person, and not the vehicle.

[4] Let us now examine the laws with reference to this situation, for here lies the crux of this case. May an officer, when by the evidence of his senses he discovers, or in good faith believes he discovers, with reasonable grounds to believe, that a person is intoxicated, arrest the person and also the automobile, and search it without a warrant? If he may, the defendant's motion should be overruled; if he may not, the defendant's motion should be sustained, for the evidence shows that the transaction was an arrest of the vehicle, and search of it for evidence of the crime, done upon the evidence of the officer's senses and his firm belief, to which he swore in court, that the driver of the machine was intoxicated, and that in all probability he was transporting intoxicating liquor in the car.

If it were contended by the government that a general right existed to stop automobiles and search them without warrant, and without the evidence of the officer's senses advising him that the machine was being used in the commission of a crime, I have no doubt that the government's contention would be unsound, for this kind of practice is the very thing against which writs of liberty have always been leveled. I find only two cases from federal courts in which this view has been even inferentially sustained.

The first is United States v. Bateman (D. C.) 278 Fed. 231, in which the facts upon which the officers acted in making the search of the machine were not stated, but in which the language of the court is very broad and general, seeming as it does to countenance the right of the officer to subject any citizen to a forcible search of his automobile, where no ground to suspect that the crime has been committed by that car or those persons arises, and if this be what the court intended to hold, the opinion is unsound, and subversive of the principles of a free government. It is probable that the facts of the case showed sufficient grounds to justify the search, and that the language, while apparently broad in the way it is reported, when construed in the light of the facts of the case, is in line with the general principles which are hereafter announced. If the contrary is true, then I decline to follow that opinion.

United States v. Fenton (D. C.) 268 Fed. 221, was a case in which the defendant sought by motion to secure the return to him of an automobile which had been seized by prohibition officers for the unlawful carriage of liquor. The court declined to order the return of the machine, saying that, since the car had become forfeited to the United States, the applicant had no property in it, and could not maintain a motion for its return, and that therefore it was unnecessary for the court to decide whether the car had or had not been rightfully seized in the first instance.

Whatever may be the correct rule of law in a case of that kind, where the action is a civil one for the return of property forfeited to the government by reason of an offense committed by the property, it

is not and cannot be the law in criminal cases that an illegal arrest or search could be legalized by the finding of evidence that a crime had been committed, for a search or arrest illegal to begin with remains illegal, and no injury should be allowed to flow to the defendant by reason of his submission to it.

If the contention of the government is, however, that if, under the facts of this case, the officer had a reasonable ground to believe by the evidence of his senses that a crime was being committed in the illegal transportation of liquor, and he did believe it, he had a right to arrest both the defendant and the automobile and search them for evidences of a crime, then I think the government's position is sound, and must be sustained, for it has always been held, from time immemorial, that an animal or an inanimate object may itself be a violator of the law, and subject to the consequences thereof. This is very interestingly presented in Goldsmith Grant Co. v. United States, 254 U. S. 511, 41 Sup. Ct. 189, 65 L. Ed. 376, where reference is made to the law of deodand, by which a personal chattel that was the immediate cause of the death of any reasonable creature was forfeited. So, also, in the Mosaic law it was provided that, if an ox gore a man, that he die, the ox be stoned.

This view of the law as thus announced is not only applied in the courts of the United States (see United States v. One Black Horse [D. C.] 147 Fed. 770; Goldsmith Grant Co. v. United States, 254 U. S. 511, 41 Sup. Ct. 189, 65 L. Ed. 376), but the statutes of the United States furnish abundant support for it. The legislation of Congress with reference to vehicles engaged in the violation of law has treated them as personally committing crimes, and has authorized officers charged with the enforcement of the law to act toward them in the same manner they are authorized to act toward individuals in cases requiring arrest, and whatever of merit underlies the principle of common law that an offender may be arrested without a warrant to prevent escape applies in its fullest vigor to swiftly moving vehicles, such as automobiles.

Turning to the statutes covering the matter of the collection of customs duties, and the enforcement of the customs laws, the following significant provisions are found: Not only is the right given to customs officers to search vessels and persons on vessels for the ascertainment of the violation of customs duties, which right is no violation of the Constitution, but a proper right of border search, but these same officers are expressly authorized in Rev. St. § 3061 (Comp. St. § 5763) as follows:

"Any of the officers or persons authorized to board or search vessels may stop, search and examine * * * any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise * * * subject to duty," etc., and if there shall be found "any merchandise * * * which he shall have reasonable cause to believe is subject to duty, or * * * unlawfully introduced, * * * shall seize * * * the same."

Section 3062 (Comp. St. § 5764) provides: "Any such vehicle, and beast," etc., "shall be subject to seizure and forfeiture," and that it shall be an offense for any person driving such vehicle to willfully refuse to stop and allow such an examination; while section 3066 (Comp.

St. § 5769) requires, for the search of a dwelling house, store building, or other place, a warrant. These acts were passed in 1866.

By*Act of March 15, 1864, c. 33, 13 Statutes at Large, 29 (Comp. St. § 4141), denominated "Indians," it was provided: If any Superintendent of Indian Affairs, etc., has reason to suspect or is informed that any white person or Indian is about to introduce or has introduced any spirituous liquor, etc., he may cause the "bottles, packages, wagons, sleds, and places of deposit of such person to be searched; and if any such liquor is found therein, the same, together with the bottles, teams, wagons, and sleds shall be forfeited. While the Volstead Act (41 Stat. 315, tit. 2, § 26) makes provision as follows:

"When the Commissioner, his assistants, inspectors, or any officer of the law shall discover any person in the act of transporting in violation of the law, intoxicating liquor in any wagon, buggy, * * * water or air craft, or other vehicle, it shall be his duty to seize any and all intoxicating liquors found therein being transported contrary to law."

And it further provides:

"Whenever intoxicating liquors transported or possessed illegally shall be seized by an officer he shall take possession of the vehicle and team or automobile, boat, air or water craft, or any other conveyance, and shall arrest any person in charge thereof."

A provision is further made for the forfeiture of the vehicle and the covering of the proceeds into the Treasury of the United States.

Under the customs laws it has uniformly been held that the vehicle engaged in the unlawful carriage is forfeitable, irrespective of the privity or criminality of its owner. U. S. v. One Black Horse (D. C.) 147 Fed. 770. And this on the theory that the vehicle itself is a criminal, and subject to arrest and forfeiture, and while under the prohibition laws a more reasonable provision has been made, so as to protect the rights of innocent holders, the same law exists as to the offending thing, and the same forfeiture occurs, as to it, unless the rights of innocent parties intervene.

It will be observed that, while the customs laws make express provision for the right of stoppage and search where reasonable ground of belief in the violation of a law exists, the Volstead Act is silent as to the circumstances under which or the means by which the officers may discover the violations referred to, and it is left to the courts to determine in each case whether the act of an officer in arresting a vehicle can be said to be predicated upon a discovery, or whether the act was a mere unauthorized general apprehension without ground therefor. A case fairly well setting forth the matter is the case of Elrod v. Moss (C. C. A.) 278 Fed 130, which was a suit for damages for unlawful arrest. The court in that case said:

"Under the federal as well as the state statutes, to justify search and seizure or arrest without warrant, the officer must have direct personal knowledge, through his hearing, sight, or other sense, of the commission of the crime by the accused. But it is not necessary that he actually see the contraband liquor. Here the plaintiff had resisted the warrant to search his car for contraband liquor; he had struck the officer from his car to prevent the search, and in flight had thrown a package from his car. We think the jury might well conclude that all this constituted a discovery by Cosnell of the

plaintiff in the act of transporting contraband liquor in his automobile, and that Cosnell was justified in making the arrest for interference by plaintiff with the performance of his official duty."

See, also, Lambert v. U. S. (C. C. A.) 282 Fed. 413.

Thus bringing the matter down to the proposition with which this branch of the opinion begins, that in each case in which the right of the officer to arrest or search after arrest is challenged whether of a person or a vehicle, the question must be by the court determined as to whether the officer had discovered a violation of the law. If the court can find in any case that the officer had a bona fide belief that by his senses he had detected or discovered a violation of the law, and if in the opinion of the court the evidence of the senses on which the officer acted was sufficient grounds for the officer reaching that belief, then the arrest must be held justified, and the evidence obtained on it legal. If, on the contrary, it is the court's opinion either that the officer had no real belief that a violation of the law had been discovered, or if it is the opinion of the court that this belief was based not upon probable cause, the arrest is not legal, the search is not effective, and the evidence obtained thereby may not be availed of.

Summing up the law of the case, it is here held:

[5] (1) That no general exploratory search and seizure of either persons, houses, or effects can ever be justified, either with or without a warrant.

[6] (2) As to private residences, no search can ever be justified under the federal laws without a warrant.

[7, 8] (3) The provision against unreasonable searches and seizures, being directed to prevent general exploratory writs and investigations of the homes of persons and the property of the citizen, has no application to and does not prevent the arrest in accordance with the course of common law, and of the statutes directing the same without a warrant, and wherever a felony has been committed, either in the presence of the officer or as to which the officer has a belief induced by reasonable grounds, or a misdemeanor has been committed in the presence of the officer, that is, of which the officer has evidence by his senses sufficient to induce a belief in him based upon reasonable grounds of belief, an arrest may be made without a warrant, and the instruments and evidence of crime seized.

[9] (4) An automobile, like a person, can be guilty of offenses, and the uniform course of the federal statutes shows that, where it is apprehended in the handling of prohibited goods, it is subject to arrest and forfeiture.

[10] (5) Under the Volstead Act, an express provision for seizure upon discovery of illegal transportation is made, and the term "discovery," as used in this act, is to be construed in the light of the principles of American and English common law, defining when arrests can be made without warrant; that is, when an offense occurs in the presence of an officer, and a discovery may be said to have been made by the federal officers when the evidence of their senses induces them to believe, upon reasonable grounds for belief, that an offense is being committed, and it is not necessary, if a sincere belief exists, and this be-

lief is based upon reasonable grounds, that the officer actually see, before apprehension is made, the liquor the subject of the apprehension.

(6) Officers should be very loth to interfere with the rights of citizens, and should not arrest on mere suspicion, and wherever an arrest and consequent search of a person or vehicle is made without warrant, the government must be prepared to show, if it expects the evidence to be admissible, that the arrest and search was not a mere exploratory enterprise for the purpose of discovery, but was based upon a sincere belief, with reasonable grounds therefor, that an offense had been committed by the person or vehicle arrested.

In the case at bar the court is convinced that Officer Myers had a sincere and real belief that, from the way and manner in which the car was being driven, the driver was intoxicated, and that the car was being used to transport liquor contrary to law, and while the evidence of his senses on which that conclusion was based might at first blush appear to be meager, taken in the light of the experience of the officer in arresting and apprehending persons who had been handling the brand of liquor known as "moonshine," the court does not feel justified in holding that the officer had not probable cause for the belief engendered by the facts brought home to his senses.

It is therefore held that the arrest of the car, and its subsequent search after its arrest, was legal, that the evidence obtained thereby was admissible, and that the motion of the defendant should be overruled; and it will be so ordered.