## SCHNORENBERG v. UNITED STATES
(two cases.)

### WENINGER v. SAME.

Circuit Court of Appeals, Seventh Circuit.
December 15, 1927.

Nos. 3973–3975.

1. Searches and seizures ⬿7(10)—Search of private dwelling without warrant is unreasonable (Const. U. S. Amend. 4).

Search of private dwelling without warrant is in itself unreasonable and abhorrent to law, under Const. U. S. Amend. 4.

2. Intoxicating liquors ⬿249—Searches and seizures ⬿7(10)—Officers held authorized to search without warrant chicken coop near highway, where there was odor of whisky mash; "maliciously;" "reasonable cause" (18 USCA § 53; Const. U. S. Amend. 4).

Search without warrant of chicken coop near highway *held* not unlawful under section 6 of the act supplemental to the National Prohibition Act (18 USCA § 53) and Fourth Amendment to the United States Constitution, where odor of whisky mash came from coop, since such search was not made "maliciously," which means without legal justification, and officers had reasonable cause to believe liquor was being manufactured; requirement of "reasonable cause" being fulfilled if they had reasonably trustworthy information sufficient to warrant man of reasonable caution in believing liquor was being manufactured.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Maliciously; Reasonable Cause.]

3. Intoxicating liquors ⬿249—Prohibition officer held authorized to enter barn to search for liquor without warrant, in view of information relative to storage of liquor there (18 USCA § 53).

Prohibition officer *held* authorized to enter defendant's barn to search for liquor without warrant, where he saw whisky barrels on wagon and had information, supported by investigation that liquor was kept there, since such search was not made maliciously and without reasonable cause, within section 6 of the act supplemental to the National Prohibition Act (18 USCA § 53).

In Error to the District Court of the United States for the Eastern District of Wisconsin.

Herman Schnorenberg, Tony Weninger. and Jacob Schnorenberg were convicted of maintaining a nuisance by manufacturing and keeping intoxicating liquor, and they bring error. Affirmed.

Henry S. Sloan, of Milwaukee, Wis., for plaintiffs in error.

L. H. Bancroft, of Milwaukee, Wis., for the United States.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. These cases were heard together and will be disposed of in one opinion.

The plaintiffs in error Herman Schnorenberg and Tony Weninger were indicted together for maintaining a nuisance on the farm of Herman Schnorenberg, in that they there manufactured and kept intoxicating liquor in violation of law; and plaintiff in error Jacob Schnorenberg was indicted separately for maintaining a nuisance upon his farm, in that he kept such liquor there. All were convicted. The defendants introduced no evidence, except a single item, which will be noticed hereafter. The evidence introduced by the government was not contradicted, and showed substantially the following facts:

Herman and Jacob Schnorenberg were brothers owning and occupying adjoining farms in Washington county, Wisconsin. On March 8, 1927, two experienced prohibition agents, having received information that intoxicating liquor was being manufactured upon the farm of Herman and stored upon the farm of Jacob, went to the neighborhood of the farms to investigate. From the road they saw, on Herman's farm, a chicken coop with a chimney, and smoke and waves of heat coming therefrom. The chicken coop was about 15 feet from the public highway, and from the road they smelled the to them familiar odor of whisky mash. At the same time they observed a man coming toward them from the coop. This man proved to be Herman, and upon his clothes they detected the odor of whisky mash. They then went to the coop and found Weninger there. In the coop they also found one 125-gallon still in operation; one 75-gallon still not in operation; 49 50-gallon barrels, some of them full of mash and some of them almost empty; and one 7½ horse power upright boiler which had fire in it, the steam being connected with the still, as well as with two barrels which contained mash. They also discovered on Herman's premises, in a new barrel, 30 gallons of distilled spirits, moonshine whisky.

They seized these things and put Herman Schnorenberg and Weninger under arrest. Then one of the prohibition agents proceeded to the farm of Jacob Schnorenberg. He went up to Jacob's house, knocked on the door, and got no answer. He then walked around the house calling for Jacob. Getting no answer, he noticed tracks (there being ice and snow upon the ground), and followed these tracks, still calling for Jacob. While thus engaged he passed Jacob's barn. The door was open, and looking in he saw a wag-

on with its front toward the door, the wagon having evidently been backed into the barn, and on the wagon two new whisky barrels. He stepped in through the already open door, tapped on the barrels, and, finding one empty and the other full, removed the bung from the full one, stuck his fingers in, and ascertained that it was full of moonshine whisky. He then searched the barn further, and found 13 50-gallon barrels of moonshine whisky—altogether 700 gallons of whisky.

As stated before, the defendants introduced no evidence, except one item. In each case, when one of the prohibition agents was upon the witness stand, he was asked by counsel for the plaintiffs in error if he did not have in his possession a plat showing the location of the buildings and the surroundings of the Schnorenberg farms. He answered that he had. Counsel for plaintiffs in error demanded that he produce it, which he did, whereupon counsel introduced it in evidence as Defendants' Exhibit No. 1, and proved by the witness that he had this plat before he started to make the investigation. This plat, thus introduced into evidence by plaintiffs in error, shows the location of the buildings, including the chicken coop, on Herman's farm, and has an arrow pointing to the square marked "chicken coop," with the word "Still" at the end of the arrow; and has on Jacob's farm a square mark (which indicates a building) like that on which, on Herman's farm, is marked "barn." This square has a cross-mark before it, and below, opposite the same sort of cross-mark, is written, "Keeps M P at Jake Schnorenberg, a brother." There is no evidence as to what "M P" means, but the surrounding circumstances would suggest that it may have meant "manufactured product."

The whisky was not brought into court, nor any sample of it, nor was any offered in evidence. The plaintiffs in error, however, objected to the testimony of the prohibition agents as to facts ascertained in their search and seizure, upon the ground that the search and seizure were made without a search warrant, and were therefore unlawful. At the close of the evidence they moved to strike this testimony out, and also moved the court to direct a verdict of not guilty. These motions were all overruled, and excepted to. In each case it is insisted that the search and seizure were unlawful, because made without a search warrant and without reasonable cause, and, being such, it was error to receive evidence thereby obtained.

[1, 2] Counsel for plaintiffs in error contends that any search or seizure without a warrant is unreasonable and unlawful. This is true of a search of a private dwelling. "The search of a private dwelling without a warrant is in itself unreasonable and abhorrent to our laws." Agnello v. United States, 269 U. S. 20, 32, 46 S. Ct. 4, 6 (70 L. Ed. 145). But it is not true that the search of "any other building or property" can only be made under a search warrant. The courts have repeatedly held that such searches, without warrant, are valid, if made upon reasonable or probable cause. The books are full of such cases. The Supreme Court in Hester v. United States, 265 U. S. 57 on page 59, 44 S. Ct. 445, 446 (68 L. Ed. 898), said: "The special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to the open fields. The distinction between the latter and the house is as old as the common law."

In Dulek v. United States, 16 F.(2d) 275, the Circuit Court of Appeals of the Sixth Circuit decided that a cabin containing a still and its appurtenances, concealed in a wooded swamp on accused's 40-acre farm, 230 feet from his dwelling, was not part of the curtilage, and that it was not within the protection of the constitutional restriction against search and seizure, citing Hester v. United States, supra. See, also, Guaresimo v. United States (C. C. A.) 13 F.(2d) 848. That such a distinction exists between a man's dwelling house and his other buildings and property was recognized by Congress in its prohibition legislation.

Section 6 of the act supplemental to the National Prohibition Act (18 USCA § 53) makes it a misdemeanor for any officer of the government to search a private dwelling without a warrant, but makes the search of "any other building or property" a misdemeanor only when the search is made maliciously and without reasonable cause. In Carroll v. United States, 267 U. S. 132, 147, 45 S. Ct. 280, 283 (69 L. Ed. 543, 39 A. L. R. 790), the Supreme Court said, after quoting these provisions of section 6: "It left the way open for searching an automobile, or vehicle of transportation, without a warrant, if the search was not malicious or without probable cause."

The chicken coop on the farm of Herman and the barn on that of Jacob were buildings other than their private dwellings, and the statute left the way open for searching each of these places without a warrant, if the search was made without malice and upon probable cause. The word "maliciously" means without legal justification—in this

case, without reasonable or probable cause. Reasonable and probable cause mean the same thing. Stacey v. Emery, 97 U. S. 642, 646, 24 L. Ed. 1035. The question then comes to this: Did the officers, when they made the searches and seizures complained of, have reasonable cause to believe that intoxicating liquor was being manufactured in the chicken coop on Herman's farm and was being kept in the barn on Jacob's farm? In Carroll v. United States, supra, at page 162 (45 S. Ct. 288), after citing cases defining what reasonable cause is, the court said:

"In the light of these authorities, and what is shown by this record, it is clear the officers here had justification for the search and seizure. This is to say that the facts and circumstances within their knowledge *and of which they had reasonably trustworthy information* (italics ours) were sufficient in themselves to warrant a man of reasonable caution in the belief that intoxicating liquor was being transported in the automobile which they stopped and searched."

Tested by this, there can be no question of the lawfulness of the search and seizure of the still and other apparatus and the moonshine whisky on Herman's farm. Before entering upon his farm the officers discovered, by the senses of sight and smell, that moonshine whisky was being manufactured in the chicken coop. The acquisition by the officers, through their senses, of knowledge of facts which in reasonable men would induce the belief that a crime is being committed, plainly justified the search and seizure upon the farm of Herman. In McBride v. United States (C. C. A.) 284 F. 416, the officers went on the premises without a search warrant and seized a still. The entry and seizure were justified on the ground that they entered the premises after smelling fumes of whisky then being made in violation of law, and the court held that, when an officer is apprised by any of his senses that a crime is being committed, it is being committed in his presence, and that the search and seizure in that case were lawful.

[3] The search and seizure on Jacob's farm require further consideration. As stated by the Supreme Court in Carroll v. United States, supra, if the facts and circumstances within the officer's knowledge, and of which he had reasonably trustworthy information, were sufficient to warrant a man of reasonable caution in believing that the barn contained intoxicating liquor, the search was reasonable and lawful. The evidence drawn out by plaintiff in error in reference to the plat shows that it was in the possession of the prohibition agent before he made either search. The plat so fitted the situation as to indicate that it was drawn by a person having knowledge of the facts. There is no evidence as to how this knowledge was obtained, but that the officers had it is sufficiently shown by the plat. With the knowledge of facts just discovered, and with the information indicated by the plat, the officer proceeded to the farm of Jacob, and, while searching for Jacob (we may infer for the purpose of inquiring as to the storing of liquor upon his farm, or of getting his consent to search for such liquor), he saw the whisky barrels on the wagon in the barn indicated upon the plat.

The question is: Were the facts then in possession of the prohibition officer, together with the information indicated, such as would suggest to a reasonably cautious man, under all the circumstances, that intoxicating liquor was being unlawfully kept upon the premises of Jacob? The officer then knew that intoxicating liquor was manufactured on Herman's farm, and had information from the plat, which up to that time had proved to be reliable and trustworthy, that it was stored upon Jacob's farm. His investigation upon Herman's farm had just established the accuracy of the information as to the manufacture there. Only a small amount of manufactured liquor was found upon this farm. The capacity of the stills discovered would indicate a large product, and the officer might reasonably infer that this product was stored somewhere. He immediately proceeded to the farm and barn of Jacob, and there saw through the open door of the barn new whisky barrels, such as the barrel, full of moonshine whisky, which he had already discovered on Herman's farm.

We think the knowledge and information possessed by the prohibition officer, at the time he entered the barn to investigate as to the contents of the barrels upon the wagons, was sufficient to justify a reasonably cautious man in believing that the crime of unlawfully keeping liquor in the barn was being then committed and committed in his presence.

There is no ground for insisting that plaintiff in error Weninger was entitled to the constitutional protection asserted. The officers did not search his coop or his barn. They arrested him in the very act of violating the law.

The judgments are affirmed.