**UNITED STATES v. ONE KEMPER RADIO, etc.**

**SAME v. BROWN.**

Nos. 21708, 25116.

District Court, N. D. California, S. D.
Oct. 5, 1934.

H. H. McPike, U. S. Atty., and Thos. G. Goulden, Asst. U. S. Atty., both of San Francisco, Cal.

George J. Hatfield and Frank J. Perry, both of San Francisco, Cal., for libelee and defendant.

ST. SURE, District Judge.

Libel of information against one Kemper radio and other miscellaneous personal property which it is charged was within the possession of Frank Brown, alleged bootlegger, in fraud of revenue laws of the United States. The government seeks a forfeiture of the property (R. S. § 3453, section 1185, title 26 USCA).

An information charging Brown with concealment and possession of tax unpaid liquor was also filed (R. S. §§ 3450 and 3452, sections 1181 and 1184 respectively, title 26 USCA), and arrest was made on a bench warrant issued thereon.

Motions to suppress and exclude the evidence, upon the ground that claimant and defendant's constitutional rights had been invaded (Fourth and Fifth Amendments to the Constitution of the United States), were made in both cases, and, as the same facts apply to both, they will be considered together.

The parties entered into and submitted to the court the following:

"Agreed Statement of Facts

"This is a libel of information seeking the forfeiture of certain goods, merchandise, articles, objects and personal property found in the premises known as 1153 Valencia Street. Claimant Frank Brown questions the legality of the search.

"The premises involved is one of two stores located on the ground or street level of an apartment building on Valencia Street in the City and County of San Francisco. The stores are separate and have no connection with one another. On the hearing before the Court on the motion to suppress, Keith De Kalb, a Deputy Collector of Internal Revenue, testified to visiting one of these stores known as 1153 Valencia Street on January 9, 1934, which he described as being a store in appearance only, that is, that the show windows had some commercial display and on the awning in front thereof appeared the words 'Stationery and Drawing Supplies,' but the door leading into the premises was not open to the public in that it was secured by a mechanical lock which automatically became operative when the door was closed and could be opened only from within. He further testified that approximately ten days prior to this visit he had received information from a reliable source that said premises was operating as a retail liquor store, selling liquor that was apparently bootleg, and that there was no occupational tax stamp in evidence in the premises.

"The witness further testified that he had information that these premises, for several years prior to January 9, 1934, had had the reputation of being a bootleg joint; that he personally had on several occasions as an agent of the Bureau of Prohibition, unsuccessfully attempted to gain entrance thereto; that the outward appearance of the premises had not changed since his previous visits; and that the records of the Alcoholic Beverage Unit, which has succeeded to the records of the former Prohibition Unit, and which he checked prior to visiting the premises on the day in question, showed arrests made on the premises during the year 1933 for two violations of the National Prohibition Act.

"When the Deputy Collector reached the premises in question the door thereof was open about three feet and claimant Frank Brown was standing in the doorway. The witness approached Frank Brown, and stood within the open doorway; that the door could not under such circumstances be closed; and asked if he could get a drink. Brown in reply asked him if he had a card and when the witness answered in the negative he was advised

that he, Brown, did not remember witness and could not admit him. Thereupon the officer advised Brown that he was a Deputy Collector of Internal Revenue and exhibited to him his credentials (claimant's Exhibit 2, a copy of which is hereto attached); that he had information that a barroom was being operated on the premises and he desired to inspect it for tax unpaid liquor.

"The witness further testified that during this conversation he received a very strong barroom odor which he described as similar to the odor one would receive in a saloon or place where whiskey and like beverages were served; that such odor consists of a combination of whiskey, wine and beer odors. He also testified (over objection of the government that the question was improper, immaterial and irrelevant) that he could not tell from the odor he received whether or not the liquors from which the odor emanated was tax paid, but that he could tell that such liquors were subject to a tax. Through the doorway he could see a partition painted a mottled green and in front of the partition two beer barrels with canceled tax stamps thereon. Upon being shown a diagram of the premises (prepared for claimant in evidence as claimant's Exhibit 1), the witness testified he could not see beyond the green partition, while standing in the doorway of the premises, and that the barroom could not be seen from the doorway.

"Taxable liquors on which no tax had been paid were found in the premises, which consisted of a barroom, store room and serving rooms. Claimant Brown was placed under arrest."

At the oral argument, counsel for the government admitted that, at the time the officer entered the premises without a search warrant, for the purpose of making a search, no offense had been committed in his presence, but that, after the entry, search, and examination of the evidence, arrest was made.

■ In its brief, the government says that it "desires to impress upon the court that it does not claim that Rev. St. 3177 [section 92, title 26 USCA] does of itself supply probable cause to inspect any premises on mere suspicion, and the Government in this case does not justify the search * * * on R. S. 3177 alone." Said section provides that any internal revenue agent "may enter, in the daytime, any building or place where any articles or objects subject to tax are made, produced, or kept, within his district, so far

as it may be necessary, for the purpose of examining said articles or objects." But the government contends that, if it "had ample probable cause to believe that articles or objects subject to a tax were kept in the premises, the Government agent was in duty bound to enter" without a search warrant for the purpose of inspecting and seizing all merchandise upon which taxes had not been paid.

Rev. St. § 3177 (section 92, title 26 USCA), applies to breweries, distilleries, and like places which have been registered under the provisions of the Internal Revenue Act (26 USCA § 281). The distinction between such places and this case is obvious. One who registers his place in effect consents to its being searched by revenue officers. One who does not register gives no such consent, and the statute has no application to him. United States v. Hilsinger (D. C.) 284 F. 585, 589; United States v. Swan (D. C.) 15 F. (2d) 598, 599.

■■ The libel under consideration is based on R. S. § 3453 (section 1185, title 26 USCA). "There is nothing stated explicitly in that section which authorizes an entry, search, and seizure without process; and it is unreasonable to believe that the section as drawn was intended to avoid the Fourth Amendment to the Constitution." United States v. Two Soaking Units (D. C.) 44 F.(2d) 650, 653. "Searches and seizures under the Internal Revenue Laws are subject to the same constitutional limitations as those under the National Prohibition Act [27 USCA]." United States v. Swan, supra. In Wagner v. United States (C. C. A.) 8 F.(2d) 581, 584, it was held that the internal revenue statutes are subject to the Fourth Amendment, and are to be construed as not to conflict therewith. Clearly this was the intention of the Congress, for Rev. St. § 3462, as amended (section 1195, title 26 USCA), makes specific provision for the issuance of search warrants when it appears "that a fraud upon the revenue has been or is being committed upon or by the use of the said premises."

The constitutional protection against unlawful search and seizure extends to business places as well as homes. United States v. Lefkowitz, 285 U. S. 452, 464, 52 S. Ct. 420, 76 L. Ed. 877, 82 A. L. R. 775; Temperani v. United States (C. C. A.) 299 F. 365; In re Phœnix Cereal Beverage Co. (C. C. A.) 58 F.(2d) 953.

As above stated, the government admits that no offense was committed in the presence

of the officer, and that the search was not made incident to an arrest.

The contention of the government that under the facts the officer was justified in making the entry and search complained of is not sustained by the law. There is an orderly way to proceed in such cases, which may not be disregarded at will by government officers. Taylor v. United States, 286 U. S. 1, 6, 52 S. Ct. 466, 76 L. Ed. 951.

"An unlawful search cannot be justified by what is found. A search that is unlawful when it begins is not made lawful when it ends by the discovery and seizure of liquor. It was against such prying, on the chance of discovery, that the constitutional amendment was intended to protect the people. Neither is the discretion of the officer, however good and well-intentioned, a substitute in law for a search warrant issued by a proper magistrate. * * * Constant reiteration of these fundamental principles is warranted by the fact that they seem to be so frequently overlooked." United States v. Slusser (D. C.) 270 F. 818, 819, 820.

The Supreme Court has repeatedly frowned upon exploratory searches. In Go-Bart Importing Company et al. v. United States, 282 U. S. 344, 357, 51 S. Ct. 153, 158, 75 L. Ed. 374, it was said: "This [second clause of the Fourth Amendment] prevents the issue of warrants on loose, vague or doubtful bases of fact. It emphasizes the purpose to protect against all general searches. Since before the creation of our government, such searches have been deemed obnoxious to fundamental principles of liberty. They are denounced in the constitutions or statutes of every State in the Union. Agnello v. United States, 269 U. S. 20, 33, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409. The need of protection against them is attested alike by history and present conditions. The Amendment is to be liberally construed and all owe the duty of vigilance for its effective enforcement lest there shall be impairment of the rights for the protection of which it was adopted. Boyd v. United States, 116 U. S. 616, 623, 6 S. Ct. 524, 29 L. Ed. 746; Weeks v. United States, supra, pages 389–392 of 232 U. S., 34 S. Ct. 341 [58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177]."

I am of the opinion that the entry by the officer was wrongful, and the search and seizure unreasonable. Both motions to suppress and exclude the evidence will be granted, and both cases will be dismissed.