**ROBERSON v. UNITED STATES.**

No. 10409.

Circuit Court of Appeals, Sixth Circuit.

Jan. 19, 1948.

Carlyle S. Littleton, of Chattanooga, Tenn., and W. E. Badgett, of Knoxville, Tenn. (Carlyle S. Littleton, of Chattanooga, Tenn., and Taylor & Badgett, of Knoxville, Tenn., on the brief), for appellant.

Ferdinand Powell, Jr., of Johnson City, Tenn. (James B. Frazier, Jr., of Knoxville, Tenn., and Ferdinand Powell, Jr., of Johnson City, Tenn., on the brief), for appellee.

Before ALLEN, McALLISTER, and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The appellant, Algie Roberson, appeals from a judgment of conviction under an indictment which charged (1) the illegal possession of whiskey in unstamped containers and (2) concealing whiskey removed in violation of the Revenue laws of the United States. The errors complained of are the orders of the District Court overruling his motions to suppress evidence, made both prior to and during the trial, and overruling his motion for a new trial. The appellant contends that the evidence which was introduced and used to secure the conviction was obtained through an illegal search and seizure.

Appellant and his wife owned a house at 701 Liberty Street in Chattanooga, Tennessee, in which they had resided approximately seven years, and which was appellant's legal domicile. On December 14, 1943, appellant and his wife purchased a farm, containing 42 acres, some distance outside of Chattanooga, on the Browntown Road. Shortly after buying the farm, appellant entered the Marine Corps and did not return until April 1946. The farm was unoccupied from the time they bought it until about June 1946. When appellant returned in April 1946, it was in bad and not livable condition, but beginning about June 1946 he began to put the place in repair. He put a new floor in one room, had the floors painted and the wood-work painted inside. Three rooms were papered, the back yard weeded and cleaned up. There was a field planted in corn. There was a barn on the property, which housed two mares. There was a pig sty with pigs in it, a chicken house and chicken lot with 50 or 75 chickens in it. Inside the fenced-in portion of the property was the dwelling house, a smokehouse, and other outhouses. At the time of the search, on October 24, 1946, a stove had not been installed in the house but appellant and his wife had a hot plate which was used for cooking purposes. A small amount of furniture, consisting of three beds, bed clothing, a divan, tableware, dishes, and towels, and some food had been brought in. Farm tools had been brought there and used. Prior to the search, appellant had lived there for over a month working about the place, putting it in repair, weeding and cleaning it. The children were in school but Mrs. Roberson went to the farm practically every day and usually had lunch there with the appellant. She and the three children usually stayed there over week-ends, although they lived in the city house during the week. Appellant was occupying the southwest room of the house, was taking care of the place and looking after the feeding and watering of the chickens, cows and mares. It was the purpose of his wife and children to join him and live there as soon as he had the place finished.

On October 24, 1946, at about 8:30 or 9:00 a. m., two investigators of the Alcohol Tax Unit drove to a point near the farm. They approached the house through a thick wood and across some cleared land. They saw appellant and another man working and heard a banging that sounded like striking metal. As they came closer they saw appellant in the doorway of the smokehouse with a wooden keg. Appellant was in a slightly stooping position. The agents entered the barn lot, and as they approached appellant hurriedly jumped in his car and drove off. In doing so he had to drive by the officers who had to quickly get out of the roadway to avoid being struck. The officers made no attempt to stop appellant or

arrest him. Appellant was well known to them and had the reputation of doing a large moonshine business although the record shows no prior conviction for any such offense. The officers went through the front gate and around the house to the back where the smokehouse was located. They found the smokehouse door open and looking in saw eight kegs and two cola drums, none of which was open. They entered the smokehouse, opened the kegs and found two of them contained liquor. After pouring out the contents they walked around the outside of the dwelling house and looked in its windows. There were no shades or curtains and the only piece of furniture they observed was a cot in one of the rooms. One of the officers testified that appellant stated to him after he was arrested—"that he intended to move out the next day." The officers had neither a search warrant nor a warrant for the arrest of the appellant or for the arrest of anyone on the premises. The officers did not smell liquor about the place before the kegs were opened and did not know what the kegs contained until they were opened, although it was customary to use 10-gallon wooden kegs as containers for illicit whiskey in that locality.

■■■ The Fourth Amendment to the U. S. Constitution provides, —"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." A verdict of guilty through the use of evidence obtained in violation of the provisions of this Amendment renders the verdict and the judgment of conviction thereon invalid. Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; Harris v. United States, 331 U.S. 145, 150, 67 S.Ct. 1098. In the present case, the Government introduced in evidence the facts relating to the seizure of the unpaid tax whiskey found in the smokehouse. The appellant's motion to suppress this evidence made before the trial and his objection to the admission of the evidence during the trial fully raised the

issue whether the whiskey was found and seized in violation of the Amendment. The District Court ruled under the facts above set out that the house was not the appellant's home and that the condition of the premises indicated that it was not being maintained as a house in the sense of the constitutional provision, and overruled the motion to suppress and the objection to the introduction of the evidence. Such a ruling is properly one for the Court rather than the jury. Ford v. United States, 273 U.S. 593, 605, 47 S.Ct. 531, 71 L.Ed. 793—and the finding of the trial judge on a preliminary question of fact should not be reversed on appeal if it be fairly supported by the evidence. Gila Valley R. Co. v. Hall, 232 U.S. 94, 103, 34 S.Ct. 229, 58 L.Ed. 521. But the legal conclusion from the uncontradicted facts, or as found by the trial judge, is subject to review.

■■■ It is conceded by the Government that if the dwelling at the time of the search and seizure was occupied by appellant as his home or dwelling, then the smokehouse, being associated therewith and inside the yard fence, would be a part of the curtilage and a "house" within the meaning and protection of the Fourth Amendment. Wakkuri v. United States, 6 Cir., 67 F.2d 844. But it is contended on the other hand that if the dilapidated dwelling and smokehouse were vacant and unoccupied by the appellant at the time of the search and seizure, then neither of them was embraced in the term "houses" within the meaning and protection of the Fourth Amendment. We believe this contention presents the issue too broadly. A home does not lose its character as a home because it may be temporarily unoccupied. The fact that a dwelling house may be unoccupied at the time of the search does not permit a search without a warrant. Dennert v. United States, 6 Cir., 147 F.2d 286; Temperani v. United States, 9 Cir., 299 F. 365. Nor does the constitutional provision limit its protection to a single house or home. It is not at all unusual for a man to own two different houses, each of which is used by him at intervals as his home. The full purpose of the immunity from unreasonable search and seizure would be lost

if the protection shifted from one home to another as the owner moved from one house to another, either in the regular pursuit of his business or for his own convenience or pleasure. United States v. Novero, D.C. E.D. Mo., 58 F.Supp. 275, 278. Accordingly, the real issue is whether the house in the country was being used by him at the time of the raid as his house or home within the meaning of the Amendment, regardless of the fact that he may have owned another house or home in the city. In deciding this issue the Amendment should receive a liberal construction, "so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned, but mistakenly overzealous, executive officers." Gouled v. United States, supra (255 U.S., 298 at page 304, 41 S.Ct. 261 at page 263).

 Under the evidence above outlined, we believe the appellant's use of the farm house at the time of the raid was such a use as brought it within the protection of the Fourth Amendment. The uncontradicted facts show that he was actually living there and had been living there for about a month. Although the house when purchased was a dilapidated one, yet the work done on it by the appellant had made it a livable one, at least by him. The two facts that it was in livable condition and was actually being lived in by the appellant seem to be decisive of the issue. We are concerned with where the appellant himself was actually living, rather than with the intention or purpose of the remainder of the family to move there later. Under the view which we take of the case other circumstances strongly stressed by the Government are irrelevant. The facts that he owned a house at 710 Liberty Street in Chattanooga, that his family was living at that address, that he was registered as a voter from that address, that it was his legal domicile and that he did not intend to move his family out to the farm house until it was in a more suitable condition for his wife and three small children, do not in any way negative the fact that the appellant himself was actually living in the farm house at the time of the raid. The Amendment does not require that all the members of a family live in a house in order to give it the immunity provided, or that only such a house as constituted the ower's legal domicile is included within its terms. Compare In re Phoenix Cereal Beverage Co., 2 Cir., 58 F.2d 953, 956; United States v. Di Corvo, D.C. Conn., 37 F.2d 124, 132, 133; United States v. One Kemper Radio, D.C. N.D. Cal., 8 F.Supp. 304, 306. Nor is the fact that the house was meagerly furnished of material importance. As quoted from Chatham's memorable address on the Excise Bill in the court's opinion in Flagg v. United States, 2 Cir., 233 F. 481, 482,—

" 'The poorest man may in his cottage bid defiance to all the forces of the crown; it may be frail, its roof may shake, the wind may blow through it; the storm may enter, the rain may enter; but the King of England cannot enter; all his forces dare not cross the threshold of the ruined tenement.' "

 We do not agree with the contention of appellee's counsel that even if it be found that the farm house was appellant's home, yet the search and seizure was not unreasonable under the facts known by the officers. In this connection stress is laid upon appellant''s reputation for engaging in the moonshine whiskey business, the handling by appellant of a ten-gallon wooden keg, such as was customarily used in the illicit whiskey business, a banging noise which sounded like bungs being tightened, and his hasty flight when he observed the approach of the officers. It is true that the Fourth Amendment does not specifically provide that a search warrant is necessary for every valid search and seizure. It has been held many times that it is only unreasonable searches and seizures which come within the constitutional interdict. Harris v. United States, supra, 331 U.S. 145, 150, 67 S.Ct. 1098. The search of a moving automobile upon probable cause and a reasonable search of premises incidental to a lawful arrest therein, have been recognized as valid, without the existence of a search warrant in either case. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; Harris v. United States, supra. But it appears to be now settled that one's home cannot lawfully be searched.

without a search warrant, except as an incident to a lawful arrest therein. Agnello v. United States, 269 U.S. 20, 32, 33, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409; Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951; Dennert v. United States, supra; Wakkuri v. United States, supra; Poulos v. United States, 6 Cir., 8 F.2d 120. In the present case, as pointed out in both the Taylor case and the Dennert case, there was ample opportunity to obtain a search warrant. Some cases relied on as indicating a possible contrary view, involve the search without a warrant of a building or property other than a private dwelling, and are not applicable. Fryar v. United States, 6 Cir., 3 F.2d 598; Guaresimo v. United States, 6 Cir., 13 F.2d 848; Dulek v. United States, 6 Cir., 16 F.2d 275; Schnorenberg v. United States, 7 Cir., 23 F. 2d 38; Sect. 53a, Title 18 U.S.C.A. In United States v. Heitner, 2 Cir., 149 F.2d 105, relied upon by appellee, it was held that hasty flight is a legitimate ground for the inference of guilt justifying an arrest; the search of a dwelling was not involved.

The judgment of the District Court is reversed and the case remanded for further proceedings consistent with the views expressed herein.