William P. ALLINDER, et al.,
Plaintiffs,

v.

STATE OF OHIO, et al., Defendants.

No. C 84–7395.

United States District Court,
N.D. Ohio, W.D.

July 19, 1985.

Gregory Arnold, Toledo, Ohio, for plaintiffs.

John K. Maguire, Asst. Atty. Gen., Columbus, Ohio, for defendants.

## MEMORANDUM and ORDER

WALINSKI, District Judge.

This matter is before the Court on a motion for partial summary judgment filed by plaintiffs, William P. Allinder and Caroline I. Allinder. Defendants have filed a memorandum in opposition to the motion for summary judgment. Also before the Court is plaintiffs' reply to defendants' memorandum in opposition. Plaintiffs' motion for partial summary judgment seeks a declaration of this Court that the Ohio Department of Agriculture's apiary inspection program is an unconstitutional exercise of state power in that plaintiffs' apiaries are being inspected by the state without a search warrant, without their prior knowledge and outside their presence; and thus constitute an unreasonable and unlawful search of their property. Plaintiffs further seek a declaration that Ohio Rev.Code § 909.05 is unconstitutional to the extent that it provides legislative authority for the Ohio Department of Agriculture to conduct administrative inspections of plaintiffs' apiaries without securing a search warrant.

On May 9, and 10, 1984, the parties presented testimony and documentary evidence on this issue at a hearing before the Court on plaintiffs' motion for preliminary injunction. In Findings of Fact and Conclusions of Law ("Findings"), filed on July 30, 1984, this Court concluded that the plaintiffs failed to establish irreparable harm and, therefore, denied the motion for preliminary injunction. The July 30th opinion, however, considered at length the warrant requirements relating to administrative searches and found that plaintiff established a substantial likelihood of success on the merits of their claim. The opinion further questioned the existence of material issues of fact concerning the constitutionality of the warrantless search provision of the Ohio Apiary Inspection Law. O.R.C. § 909.05. Plaintiffs then filed the motion *sub judice.*

Rule 56, Fed.R.Civ.P. directs the disposition of a motion for summary judgment. In relevant part Rule 56(c) states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ...

In ruling on a motion for summary judgment, the Court's function is to determine if any genuine issue exists, not to resolve any factual issues, and to deny summary judgment if such an issue exists. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Tee-Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193 (6th Cir.1974). Further, "[i]n ruling on a motion for summary judgment, the Court must construe the evidence in its most favorable light for the party opposing the motion and against the movant." *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir.1962). To summarize, if the movant demonstrates that he is entitled to a judgment as a matter of law, then the Court must next weigh the evidence in a light most favorable for the party opposing the motion; if reasonable minds could differ as to a material fact in issue, then a genuine factual dispute exists and the motion for summary judgment must be denied.

Rule 56(e) places a responsibility on the party against whom summary judgment is sought to demonstrate that summary judgment is improper, either by showing the existence of a material question of fact or that the underlying substantive law does not permit such a decision. In relevant part the provisions states:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Rule 56(e), Fed.R.Civ.P.

■ Plaintiffs' complaint argues that the Ohio Apiary Inspection Law, O.R.C. § 909.-01 *et seq.*, violates their constitutional rights to be free from (1) unlawful search and seizure and (2) taking property without due process of law. The singular issue upon which plaintiffs seek relief in their motion for partial summary judgment is whether the warrantless search of their apiaries, pursuant to the Ohio Apiary Inspection Law, violates the Fourth Amendment's prohibition against unreasonable searches. The Court's present consideration is therefore limited to that issue.

The United States Supreme Court recently reaffirmed the longstanding view that administrative, nonconsensual entry and search of property is governed by the warrant requirement of the Fourth and Fourteenth Amendments. *Michigan v. Clifford*, 464 U.S. 287, 104 S.Ct. 641, 646, 78 L.Ed.2d 477 (1984). *See also Marshall v. Barlow's Inc.*, 436 U.S. 307, 311–13, 98 S.Ct. 1816, 1819–20, 56 L.Ed.2d 305 (1978); *Camara v. Municipal Court*, 387 U.S. 523, 528–33, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). The Fourth Amendment's prohibitions against unreasonable searches was extended to administrative inspections of private commercial property nearly a decade and a half ago. *Camara*, 387 U.S. at 523, 87 S.Ct. at 1727; *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). The reason for this extension was found in the basic purpose of the amendment, which is "to safeguard the privacy and security of individuals against arbitrary invasions by government

officials." *Camara*, 387 U.S. at 528, 87 S.Ct. at 1730.

The Fourth Amendment warrant requirement, however, is not without exception. *Donovan v. Dewey*, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1982); *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). The United States Supreme Court recently stated:

[U]nlike searches of private homes, which generally must be conducted pursuant to a warrant in order to be reasonable under the Fourth Amendment, legislative schemes authorizing warrantless administrative searches of commercial property do not necessarily violate the Fourth Amendment. *See, e.g., United States v. Biswell*, 406 U.S. 311 [92 S.Ct. 1593, 32 L.Ed.2d 87] (1972); *Colonnade Catering Corp. v. United States*, 397 U.S. 72 [90 S.Ct. 774, 25 L.Ed.2d 60] (1970). The greater latitude to conduct warrantless inspections of commercial property reflects the fact that the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home, and that his privacy interest may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections. *United States v. Biswell, supra*, at 316 [92 S.Ct. at 1596].

*Donovan*, 452 U.S. at 598–99, 101 S.Ct. at 2538 (footnote omitted). Courts have been unable to articulate a "ready test" for determining reasonableness other than by balancing the need for the warrantless search against the businessman's privacy interest. *Camera*, 387 U.S. at 536–37, 87 S.Ct. at 1734–35. The determinative factors to be considered are, whether the state has shown a substantial need for warrantless searches, whether the industry affected is so closely regulated as to provide notice of the prospect of governmental intrusion and whether the statutory scheme enacted "provides an adequate substitute for a warrant in terms of the certainty and regularity of its application."

*Donovan*, 452 U.S. at 603, 101 S.Ct. at 2540.

First, the Court has some doubt as to the state's need for a warrantless search. The defendants argue that warrantless searches are essential to the apiary inspection system to preserve the advantage of surprise. They assert that "[i]t would be a very simple matter for a beekeeper to remove a diseased hive from the inspector's eyes only to return it to its original position following the inspection." This argument is unpersuasive in light of the testimony at the injunction hearing of the state apiarist, who stated that a vast majority of the beekeepers in Ohio are hobbyists. These hobbyists are unfamiliar with the symptoms of the infectious bee diseases, and consider the state inspection for disease to be a worthwhile service. Moreover, testimony indicated that notice to beekeepers is left to the discretion of the individual inspector. In the instant case, the deputy state inspector called the plaintiffs giving them three days notice of an inspection. The Court, therefore, questions the viability of this "surprise" argument and, in turn, questions the state's showing of need for a warrantless search.

Defendants further submit that obtaining a search warrant for individual apiary inspections would effectively eliminate the apiary inspection program. The state expresses concern as to the administrative burden, as well as the effect the time lapse would have on the program with its unique seasonal nature. This Court is unconvinced, however, that requiring warrants to inspect would impose serious burdens on the inspection system or the courts, would prevent inspections necessary to enforce the statute, or would make the program less effective. As discussed above, it is clear that a great majority of the apiarists can be expected to consent to inspection without a warrant. In those few cases where owners do insist on a warrant, the delay and increased administrative burden will not be so serious as to endanger the inspection program.

Second, the Court must consider whether the beekeeping industry has been "long subject to close supervision and inspection." *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 76–77, 90 S.Ct. 774, 776–77, 25 L.Ed.2d 60 (1970). In *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305 (1978), the Supreme Court observed that certain industries have had such a history of close governmental supervision that no reasonable proprietor entering into such a business could have a justifiable expectation of privacy. *Balelo v. Baldrige*, 724 F.2d 753, 764 (9th Cir.1984). Liquor, firearms and mines are industries found to be "closely regulated." *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970); *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); *Donovan v. Dewey*, 452 U.S. 594, 596, 101 S.Ct. 2534, 2536, 69 L.Ed.2d 262 (1982).

At the injunction hearing and in post-hearing briefs, the defendants argued that "the beekeeping industry in Ohio has been and continues to be closely regulated by the Ohio Department of Agriculture," and that "the individual beekeepers are aware of the requirements for periodic inspection." (D. Post-hearing Memo. in Opp. to Prel.Inj., at 13). Testimony presented at the evidentiary hearing, however, did not support these assertions. The state apiarist testified that less than 100% of the beekeepers in Ohio are registered and that only about 85% of those registered are inspected every year. (Inj.Tr. at 33). He testified further that the typical reason for failure to register colonies is beekeepers who are unaware of the registration and inspection requirements. Although the State of Ohio has been registering and inspecting bee colonies since the 1930's, the state's evidence fails to prove that such regulation had the pervasiveness and regularity necessary to affect the individual proprietor's legitimate expectation of privacy. Unlike the federal government's control over the alcohol, firearms, and mining industries, the beekeeping industry is not "pervasively regulated" by the Department

of Agriculture under the Ohio Apiary Inspection Law. *See Dow Chemical Co. v. U.S.*, 536 F.Supp. 1355 (E.D.Mich.1982).

Third, the Court must examine the statutory scheme to determine whether it provides "an adequate substitute for a warrant in terms of certainty and regularity of its application." *Donovan*, 452 U.S. at 603, 101 S.Ct. at 2540. The record indicates that unlike the Coal Mine Safety and Health Act examined in *Donovan* and found to provide a predictable, defined regulatory presence, the Ohio Apiary Inspection Law leaves the frequency of inspections to the unchecked discretion of the local inspectors. Upon review of the evidence presented at the preliminary injunction hearing, this Court concluded, in its Findings of July 30, 1984, that the apiary statute gives the field inspector unbridled discretion as to when to search and whom to search. (Findings, at 10). The defendants contend that this preliminary conclusion was erroneous.

Defendants argue that apiary inspections are unique in that they are seasonal and can only occur during favorable (warm, dry) weather conditions. (D.Memo. in Opp. S.J. at 10). Moreover, defendants contend that apiary inspectors are not exercising "unbridled" discretion since the department has an annual training program for all apiary inspectors at which each inspector receives the program guidelines and procedures set forth in a training manual. A new inspector will be subjected to extensive field training with a state inspector in his region before conducting inspections on his own. (Inj.Tr. at 142–43).

With reference to plaintiffs' evidence that the inspection program is conducted in an irregular and erratic fashion, defendant counters stating that plaintiffs' apiaries have not been inspected in recent years due to litigation by the Allinders in the state courts. The defendants urge that testimony at the hearing established that the goal of the apiary inspection program is to inspect each beekeeper once a year. The record indicates that approximately eighty-five percent of the registered beekeepers

are inspected each year. (Inj.Tr. at 33). It is the defendants' contention that this is a statistically high rate of inspection considering the unique enforcement problems encountered in an apiary inspection program. Thus, the defendants argue that considering the unique nature of the apiary inspection program and utilizing the criteria set forth in both *Marshall* and *Donovan*, this Court should find the certainty, regularity and fairness necessary to render the warrantless searches of apiaries reasonable.

After thorough review of the Ohio Apiary Inspection Law, the transcript of the injunction hearing, the filed affidavits and the memoranda of the parties, the Court concludes that the statute, *sub judice*, does not provide an adequate substitute for a warrant in terms of certainty, regularity and fairness of its application. The authority to make warrantless searches devolves almost unbridled discretion upon the field inspectors as to when to search and whom to search. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 323, 98 S.Ct. 1816, 1825, 56 L.Ed.2d 305 (1978). The existence of this discretion was conceded by defense witnesses several times during the injunction hearing. The state apiarist testified that the inspectors are part-time workers who plan their work as they see fit and that there is no minimum requirements for hours of inspection per week. (Inj.Tr. at 43–45). The inspectors decide when to inspect and whom to inspect. (Inj.Tr. at 44). The state apiarist further testified that the inspectors have to make subjective judgments regarding the presence of disease and that they have the authority to decide whether or not to send a smear sample for verification of the disease in the individual case. (Inj.Tr. at 63). Even the manner of the inspection is left to the discretion of the individual inspector. (Inj.Tr. at 89).

The Ohio Apiary Inspection Law is, therefore, not sufficiently comprehensive and predictable that "the assurance of regularity provided by a warrant is rendered unnecessary." *Donovan v. Dewey*, 452 U.S. 594, 599–02, 101 S.Ct. 2534, 2538. The State of Ohio has failed to limit in any

meaningful way the unbridled discretion granted the field inspector by the apiary inspection statute. "Where [the State] has authorized inspection but made no rules governing the procedures that inspectors must follow, the Fourth Amendment and its various restrictive rules apply." *Colonnade Corp. v. United States*, 397 U.S. 72, 77, 90 S.Ct. 774, 777, 25 L.Ed.2d 60 (1970). Accordingly, I must conclude that a warrant is constitutionally required to assure an unconsenting apiary owner, who may have little real expectation that his business will be subject to inspection, that the contemplated search is "authorized by statute, and ... pursuant to an administrative plan containing specific neutral criteria." *Marshall v. Barlow's, Inc.*, 436 U.S. at 323, 98 S.Ct. at 1826.

■ In a typical commercial setting, the businessman's expectation of privacy is rarely at issue in an administrative inspection case. In the instant case, however, the plaintiffs' commercial setting consists of bee colonies placed on separate parcels of land, located in four Ohio counties. Given the atypical nature of this case, the Court must consider whether the plaintiffs have a reasonable expectation of privacy in light of the open fields doctrine of *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) and its progeny.

Recently, in *Oliver v. United States*, 466 U.S. 170, 184, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), the United States Supreme Court reaffirmed the vitality of the open fields doctrine. In that case, police discovered marijuana planted on a secluded section of the petitioner's farm, in a fenced area with no trespassing signs posted around the property. Granting a motion to suppress evidence, the district court concluded that this was not an "open" field because the petitioner "had done all that could be expected of him to assert his privacy in the area of the farm that was searched." *Id.* 104 S.Ct. at 1738. The Court of Appeals for the Sixth Circuit reversed the district court. The Court of Appeals reasoned that the "human relations that create the need for privacy do not ordinarily take place" in open fields. *Id.* at 1739. The United States Supreme Court affirmed this finding concluding that the petitioner's asserted expectation of privacy in the open field "is not an expectation that 'society recognizes as reasonable.'" *Id.* at 1741. The Supreme Court stated:

> [O]pen fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance. There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields. Moreover, as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office or commercial structure would not be. It is not generally true that fences or no trespassing signs effectively bar the public from viewing open fields in rural areas.

*Id.* at 1741. The *Oliver* case focuses on the legitimate expectation of privacy of the person whose open field was being searched. The Supreme Court examined the petitioner's legitimate privacy interest and concluded that none existed.

> It is true, of course, that petitioner Oliver and respondent Thornton, in order to conceal their criminal activities, planted the marijuana upon secluded land and erected fences and no trespassing signs around the property. And it may be that because of such precautions, few members of the public stumbled upon the marijuana crops seized by the police. Neither of these suppositions demonstrates, however, that the expectation of privacy was *legitimate* in the sense required by the Fourth Amendment. The test of legitimacy is not whether the individual chooses to conceal assertedly "private" activity. *Rather, the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment.* As we have explained, we find no basis for concluding

that a police inspection of open fields accomplishes such an infringement.

*Id.* at 1743 (emphasis added). Footnote 13 of the opinion appears to be particularly illustrative of the Supreme Court's rationale, where it states: "Certainly the Framers did not intend that the Fourth Amendment should shelter criminal activity wherever persons with criminal intent choose to erect barriers and post no trespassing signs." *Id.* at 1743 n. 13.

It is clear to the Court that the open fields doctrine as enunciated in *Oliver* is not applicable to the instant case. Unlike the criminal activity discovered in *Oliver,* the commercial activity of the plaintiffs is both legal and valuable to society. Beekeeping, by its very nature, must be performed outside and in a natural setting. Legitimate commercial activities which cannot be completely confined or enclosed (i.e. lumber yards, sand mines and rock quarries) remain within the protection of the Fourth Amendment. The opinion in *Oliver* does not conclude that every activity carried on in an open field is outside constitutional protection. Rather, the Supreme Court stated that "the correct inquiry [to determine the *legitimacy* of the expectation of privacy] is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." *Oliver,* 104 S.Ct. at 1743. This Court concludes that beekeeping is among those commercial activities performed in an open field with a legitimate expectation of privacy which society recognizes as reasonable.

Other considerations take the instant case outside the open fields exception as well. First, the statute authorizing the warrantless search of apiaries does not limit that search to bee colonies found in open fields. The statute in relevant part states the following:

§ **909.05** Power to enter upon premises.

To enforce sections 909.01 to 909.18, inclusive, of the Revised Code, the director of agriculture or his authorized representatives *shall have access to and egress from any apiary or to any prem-*

*ises, buildings, or any other place,* public or private, in which he has reason to believe that bees, honey, wax, used hives, or used appliances are kept. No person shall resist or hinder the director or his authorized representative in the discharge of their duties under such sections. No occupied dwelling may be entered without a search warrant.

Thus, the express language of the apiary law authorizes the search of any premises, building, or any other place which may store bees, honey, wax, used hives or used appliances. The warrantless search of an apiary or building located on the curtilage around a home, effected by means of a physical intrusion into the curtilage, clearly violates the Fourth Amendment absent exigent circumstances. *See Dow Chemical Co. v. United States,* 749 F.2d 307 (6th Cir.1984); *Robertson v. United States,* 165 F.2d 752 (6th Cir.1948). Second, unlike the EPA's photographic flyover considered by this Circuit in *Dow Chemical Co. v. United States,* 749 F.2d 307 (6th Cir.1984), the governmental inspection in the instant suit is without question sufficiently intrusive to constitute a "search" triggering the warrant clause of the Fourth Amendment. State apiary inspectors cannot do "walk by" inspection of bee colonies to detect disease. The state approved inspection technique requires opening of the colony, manipulation of the frames, location of the queen and examination of the brood. Clearly, this type of intrusion goes far beyond the public observation non-search involved in the open fields exception to the Fourth Amendment.

For these reasons, the Court concludes that the open fields exception does not take this case out of the purview of the Fourth Amendment. The Court finds that there is no genuine issue as to any material fact related to this claim. The Allinders have proved an actual expectation of privacy in their apiaries, and that expectation is one the society is prepared to recognize as reasonable. The Court further finds that warrantless, nonconsensual inspections of api-

aries to be unreasonable under the Fourth Amendment.

I hold that the Ohio Apiary Inspection Law is unconstitutional insofar as it purports to authorize nonconsensual apiary inspections without a warrant or its equivalent.

For the foregoing reason, it is

ORDERED that the Allinders' motion for partial summary judgment is hereby granted.

FURTHER ORDERED that the Ohio Department of Agriculture is permanently enjoined and restrained from conducting warrantless, nonconsensual inspections of apiaries pursuant to the Ohio Apiary Inspection Law, O.R.C. § 909.05.